DUFRESNE, Judge.
Plaintiff Tamey Vidrine appeals a judgment in which she was awarded damages for injuries she received in a collision with defendant Joseph E. Keller. Liability was stipulated to by defendant and his insurer, State Farm Mutual Automobile Insurance Company.
On appeal plaintiff asserts the trial judge was clearly wrong in finding that some of plaintiff’s medical treatment and expenses were not related to the accident. Further, she contends the trial judge committed manifest error in concluding a subsequent accident to the one at issue was a superced-ing or intervening cause of her injuries. Finally, plaintiff claims the award of $5,000 is inadequate based on the evidence.
The undisputed facts show plaintiff was proceeding westward on the Westbank Expressway in Marrero, Louisiana, on March 14, 1986, when her vehicle struck a car driven by defendant Joseph Keller which suddenly pulled out in front of her. Keller was traveling south on Garden Road at the time and failed to yield to plaintiffs right-of-way.
Liability was stipulated to by defendants, thus at trial the sole issue was quantum. Following the judge trial held on March 13, 1988, a judgment was rendered in plaintiffs favor in the amount of $3,000 for her special damages, and $2,000 for general damages.
In his reasons for judgment the trial judge found that plaintiff suffered soft tissue injuries in the collision, but refused to award damages for her claimed psychological injuries. He concluded only $3,000 of the authenticated medical expenses of $4,696.80 were attributable to the accident, the remainder being attributable to her psychological treatment. He further concluded she was only entitled to $2,000 in general damages because she “did not tell Dr. Parker of a second accident which may have contributed to her problems.”
On appeal, plaintiff first contends she proved her entitlement to damages for post-traumatic stress syndrome by a preponderance of the evidence. In this regard she points to the testimony of the various physicians who treated her, the fact she had never previously suffered functionally debilitating anxiety and the chronology of her difficulties commencing with the accident.
The record shows plaintiff was treated at the Avenue C Clinic the day after the accident, where she was diagnosed as having sustained a contusion to her right shoulder. She was told to put heat on the injury, and was given a muscle relaxant and pain medication.
A week after the accident, plaintiff suffered severe heart palpitations and shaking after retiring to bed. She went to the emergency room at West Jefferson Hospital where she was kept for observation and referred to Dr. Frederick Kushner and Dr. Claude Nesser, two heart specialists. The findings for heart involvement were negative, but she was given a prescription for Valium. Dr. Nesser felt her symptoms were due to anxiety. Dr. Kushner, however, could not relate her anxiety with any certainty to either the accident or other factors.
In the meantime, on March 20, 1986, plaintiff began seeing Dr. C.J. Ganucheau for back and right hip pain. She also saw Dr. Gordon Nutik on May 22 and May 30, 1986, for those complaints which were finally resolved by June 1986. Both doctors noted her complaints of panic attacks and anxiety which she related to the accident. Dr. Ganucheau stated she “obviously has exacerbated claustrophobia and acrophobia.”
In April, 1986, plaintiff went to her family physician, Dr. A. Mark Parker. Dr. Parker had treated Mrs. Vidrine for 12 years prior to the accident. Although his special *942 ty was obstetrics and gynecology, plaintiff went to him for occasional bouts with colds, etc. He described her on April 15, 1986 as being nervous, having difficulty swallowing and suffering from stomach upsets. He prescribed Butasol and Donatol for her and told her to decrease her consumption of stimulants and to cut down on her smoking. After following his advice she returned on May 9,1989, with the same problems, as well as her first complaints about her hip. He suggested she seek counseling for her anxiety and referred her to an orthopedist for the hip problem.
Dr. Parker next saw plaintiff on January 27, 1987, at which time she continued to complain about anxiety. This continued throughout following visits in August and September, 1987 and January and February, 1988. During that time she underwent a tubal ligation and was still on medication for her anxiety (Equinol and Valium). In February, 1988, Dr. Parker had a long discussion with plaintiff about her continuing emotional symptoms.
Dr. Parker unequivocally attributed plaintiffs anxiety, as well as her back and hip problem, to the accident. He testified that she did not suffer from such complaints prior to the accident and stated he noticed personality changes due to the continuing anxiety.
On January 23, 1987, plaintiff went to a clinical psychologist for treatment of her anxiety. The psychologist, Nancy Ru-mage, saw plaintiff only once, for three hours, during which time she was given personality tests. Ms. Rumage concluded that plaintiff has a passive-aggressive personality with underlying hysterical components. She could not give an opinion as to the validity of plaintiffs claim of post-traumatic stress syndrome, but stated her problem areas could be aggravated and exacerbated by stress.
Dr. Steve Taylor, a psychiatrist, testified that he first saw plaintiff on May 29, 1987. She was thereafter seen by his social worker or counseled by telephone until October, 1987. At the time he first saw plaintiff, he stated he was forced to meet her in the lobby of his building, because his office was located on the 39th floor and she was unable to use the elevator. He stated plaintiff exhibited a number of phobic and aerophobic symptoms, i.e. cannot drive during rush hour, or when it rains; sometimes cannot cross the Greater New Orleans Bridge; cannot shop alone; cannot tolerate crowds or closed areas.
Dr. Taylor stated the symptoms that precipitated plaintiffs hospitalization the week after the accident were classic post-traumatic stress syndrome symptoms. He further explained that her panic attacks (feeling of faintness, lightheadedness, heart palpitation and shaking) are common to this disorder and can be set off by pressure. Based on plaintiffs history, his examination of her medical records and a letter he received from Dr. Parker excluding prior emotional problems, he believed the disorder was caused by the accident. He stated in conclusion that plaintiffs prognosis for recovery is good.
Plaintiff and her husband both testified to the effect the dysfunction has had on plaintiff. Plaintiff stated she began suffering from episodes of shaking in bed before going to sleep right after the accident and that those episodes continued for two months. Mrs. Vidrine further stated she began suffering panic attacks (feeling faint, lightheaded, shaking) shortly after the accident and that she could no longer tolerate closed spaces. On the day she was hospitalized for her heart palpitations, she stated she had eaten pizza, had three Coca-Colas and smoked approximately 1¾⅞ to 2 packs of cigarettes. She noted the intake of those items was not unusual for her.
Mrs. Vidrine admitted on cross-examination that she suffered from a mild fear of heights, of the dark and of “getting fat” prior to the accident. However, she indicated the claustrophobia was a new fear and was so severe she was unable to remain in a store long enough to purchase anything. In answer to questioning on cross-examination, she explained she forced herself to ride the elevator to court, even though she could not ride one to Dr. Taylor’s office, because it was only a couple of floors to court and she had taken her medi *943 cine. She noted Dr. Taylor s office was on the 39th floor. In further answer to questioning, she stated she waited to seek psychological help because she was receiving treatment and medication from Dr. Parker.
Morrison Vidrine, plaintiffs husband, supported her testimony. He asserted that plaintiff had never suffered from emotional problems prior to the accident of March 14, 1986. He stated he went to the scene of the accident and described plaintiff as nervous and frightened at that time. Mr. Vid-rine also gave specific instances since then in which plaintiffs panic attacks caused her to return home from an outing. On one occasion she had to leave a theatre, on another she could not drive across the Greater New Orleans Bridge. Mr. Vidrine further testified his wife had difficulty shopping for two years because she gets claustrophobic in the rear of stores. Mr. Vidrine also noted her disorder has caused him a loss of mobility because he has multiple sclorosis and relies on her for transportation.
We have reviewed the evidence in this case and find plaintiff proved by a preponderance of the evidence that she suffered post-traumatic stress syndrome. The remaining question is whether it was caused by the accident of March 14, 1986, or by a second accident.
The only evidence as to a second accident was presented in plaintiffs testimony on cross-examination. While plaintiff admitted she was involved in a subsequent collision to the one at issue, she denied it was anything more than a minor incident which happened as she was turning into her mother’s driveway. In order to prevent a panic attack, plaintiff stated she went inside immediately and took her medication.
No one, including Dr. Parker, was questioned about this incident aside from plaintiff, and no date was solicited by defense counsel as to its occurrence. Thus any conclusion that this accident somehow caused plaintiffs disorder or superseded the accident of March 14, 1986 is based on insufficient evidence and is clearly wrong. As a result, the judgment must be amended to award plaintiff her full medical expenses and to increase the general damage award to adequately compensate plaintiff for her residual injury. LSA-C.C. art. 2315. Since this increase is made to compensate plaintiff for damages not attributable to the accident in the judgment, our award is res novo and we aré not limited to the principles of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), relative to the appellate court’s ability to increase or decrease damage awards when an abuse of discretion is found. Jackson v. United States Fid. & Guar. Co., 382 So.2d 223 (La.App. 3 Cir.1980); writ denied 385 So.2d 275 (La.1980). Because Dr. Taylor describes plaintiff’s disorder as moderate with a good prognosis, we are of the opinion that $5,000 will sufficiently compensate plaintiff for her injury. Thus, the general damage award will be increased to $7,000.
Accordingly, the judgment of the trial court is hereby amended to increase the award for special damages to $4,696.80 and to increase the award for general damages to $7,000. The judgment is hereby affirmed in other respects.
Costs of this appeal are to be paid by appellee.
AMENDED IN PART AND AFFIRMED AS AMENDED.